**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

ALBERT EINSTEIN MEDICAL CENTER
5501 Old York Road
Philadelphia, PA 19141

and

Case No. ##

ARTHUR G. JAMES CANCER HOSPITAL
460 West 10 Avenue
Columbus, OH 43210

and

GOOD SAMARITAN HOSPITAL AND
HEALTH CENTER
2222 Philadelphia Drive
Dayton, OH 45406

and

HIGHLAND HOSPITAL OF ROCHESTER
1000 South Avenue
Rochester, NY 14620

and

HMH HOSPITALS CORPORATION
d/b/a Hackensack University Medical Center
30 Prospect Avenue
Hackensack, NJ 07601

and

HMH HOSPITALS CORPORATION
d/b/a Jersey Shore University Medical Center
1945 Corlies Avenue
Neptune, NJ 07753

and

KECK MEDICAL CENTER OF USC
d/b/a Keck Hospital of USC
1500 San Pablo Street

Los Angeles, CA 09933

and

LONG ISLAND JEWISH MEDICAL CENTER
27005 76th Avenue
New Hyde Park, NY 11040

and

MAIMONIDES MEDICAL CENTER
4802 Tenth Avenue
Brooklyn, NY 11219

and

MIAMI VALLEY HOSPITAL
1 Wyoming Street
Dayton, OH 45409

and

OHIO STATE UNIVERSITY HOSPITAL
410 10th Avenue
Columbus, OH 43210

and

PRESBYTERIAN MEDICAL CENTER OF THE
UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM
d/b/a/ Penn Presbyterian Medical Center
51 N. 39th Street
Philadelphia, PA19104

and

SAINT LUKE'S HOSPITAL OF BETHLEHEM,
PENNSYLVANIA
d/b/a St. Luke's Hospital
801 Ostrum Street
Bethlehem, PA 18015

and

2

STATEN ISLAND UNIVERSITY HOSPITAL
d/b/a/ Staten Island University Hospital Prince's Bay
475 Seaview Avenue
Staten Island, NY 10305

and

STRONG MEMORIAL HOSPITAL
601 Elmwood Avenue
Rochester, NY 14642

and

THE PENNSYLVANIA HOSPITAL OF THE
UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM
d/b/a Pennsylvania Hospital
800 Spruce Street
Philadelphia, PA 19107

and

TRUSTEES OF THE UNIVERSITY OF
PENNSYLVANIA
d/b/a Hospital of the University of Pennsylvania
3400 Spruce Street
Philadelphia, PA 19104

and

UPMC MAGEE-WOMENS HOSPITAL
d/b/a Magee-Womens Hospital of UPMC
300 Halket Street
Pittsburgh, PA 15213

and

UPMC PRESBYTERIAN SHADYSIDE
200 Lothrop Street
Pittsburgh, PA 15213

and

WEST VIRGINIA UNIVERSITY HOSPITALS, INC.
d/b/a WVU Hospitals, d/b/a J.W. Ruby Memorial Hospital
Medical Center Drive
Morgantown, WV 26506

3

Plaintiffs,

vs.

XAVIER BECERRA,
in his official capacity as
Secretary of the United States Department of
Health and Human Services
200 Independence Avenue, SW
Washington, DC 20201

Defendant.

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF AND SUMS DUE UNDER THE MEDICARE STATUTE

### INTRODUCTION

1.      This is a civil action brought to obtain judicial review of agency decisions regarding Medicare reimbursements rendered by Xavier Becerra (the "Secretary" or "Defendant") in his official capacity as the Secretary of the United States Department of Health and Human Services. Plaintiffs are hospitals that participate in the Medicare program and qualify under the Medicare program for direct graduate medical education ("DGME") payments for training medical residents. Plaintiffs seek an order setting aside the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii), which unlawfully reduces Plaintiffs' DGME payments by decreasing the number of residents that Plaintiffs may claim during a fiscal year.

2.      Plaintiffs operate approved medical training programs for physician residents and fellows (collectively "residents"). Plaintiffs receive Medicare DGME payments, which are calculated, in part, based on the number of full-time equivalent ("FTE") residents that train at each hospital. If a resident exceeds the number of years designated as the "initial residency period" ("IRP"), the resident's time is weighted at 0.5, which means that the hospital may only count one-half of the resident's time that exceeds the IRP. Also, the number of FTEs that a hospital may

4

claim for payment in any given year is generally capped at the number of *unweighted* FTEs that it trained in its 1996 fiscal year.

3.　　The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute because it calculates a hospital's DGME payments using a weighted FTE cap rather than an unweighted FTE cap. 42 U.S.C. § 1395ww(h)(4)(F). The effect of the unlawful regulation is to impose on Plaintiffs a weighting factor on residents that are within their IRP or, viewed differently, results in a reduction of greater than 0.5 for many residents who are beyond the IRP, which prevents Plaintiffs from claiming their full FTE caps authorized by statute. Thus, the calculations of the current-year, prior-year, and penultimate-year weighted DGME FTEs (all three of which are elements of a hospital's DGME calculation in a given year) and the FTE caps are contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

4.　　The Secretary's application of this regulation violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (2012) (the "APA"); is contrary to the Medicare statute; is arbitrary, capricious, and an abuse of discretion; and otherwise contrary to law. Accordingly, Plaintiffs ask this Court to reverse the Secretary's final agency decisions and to order the Secretary to recalculate Plaintiffs' DGME payments as required by statute.

## JURISDICTION AND VENUE

5.　　This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (2012) (the "Medicare statute"), which establishes the Medicare program, and the APA.

6.　　This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers the right to obtain expedited judicial review ("EJR") of any action involving "a question of law or regulations relevant to the matters in controversy" when the Secretary's Provider

Reimbursement Review Board (the "Board") "determines . . . that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received." The Board granted EJR to Plaintiffs in decisions dated October 18, 2021 and November 16, 2021. Accordingly, this action is timely filed within the sixty-day limitations period established at 42 U.S.C. § 1395oo(f)(1). Plaintiffs have exhausted all administrative remedies prior to commencing this action.

7. Venue in this Court is proper under 42 U.S.C. § 1395oo(f)(1).

## PARTIES

8. Plaintiff Hospitals in this action are academic medical centers that operate in graduate medical education programs. The Plaintiff Hospitals in this action are listed below with their Medicare provider numbers and their cost reporting periods at issue in this action, as set forth in their administrative appeals:

 a. Albert Einstein Medical Center, Medicare Provider No. 39-0142, for fiscal year ending June 30, 2017;

 b. Arthur G. James Cancer Hospital, Medicare Provider No. 36-0242, for fiscal year ending June 30, 2010;

 c. Good Samaritan Hospital & Health Center, Provider No. 36-0052, for fiscal years ending December 31, 2017 and December 31, 2018;

 d. Highland Hospital of Rochester, Provider No. 33-0164, for fiscal year ending June 30, 2016;

 e. HMH Hospitals Corporation d/b/a Hackensack University Medical Center, Provider No. 31-0001, for fiscal years ending December 31, 2017 and December 31, 2018;

 f. HMH Hospitals Corporation d/b/a Jersey Shore University Medical Center, Provider No. 31-0073, for fiscal years ending December 31, 2017 and December 31, 2018;

 g. Keck Medical Center of USC d/b/a Keck Hospital of USC, Provider No. 05-0696, for fiscal year ending September 30, 2018;

 h. Long Island Jewish Medical Center, Provider No. 33-0195, for fiscal years ending

6

December 31, 2015 and December 31, 2016;

i.  Maimonides Medical Center, Provider No. 33-0194, for fiscal year ending December 31, 2017;

j.  Miami Valley Hospital, Provider No. 36-0051, for fiscal years ending December 31, 2014, December 31, 2017 and December 31, 2018;

k.  Ohio State University Hospital, Provider No. 36-0085, for fiscal years ending June 30, 2011, June 30, 2013 and June 30, 2017;

l.  Presbyterian Medical Center of the University of Pennsylvania Health System, Provider No. 39-0223, for the fiscal year ending June 30, 2019;

m.  Saint Luke's Hospital of Bethlehem, Pennsylvania d/b/a St. Luke's Hospital, Provider No. 39-0142, for fiscal year ending June 30, 2018;

n.  Staten Island University Hospital d/b/a Staten Island University Hospital Prince's Bay, Provider No. 33-0160, for fiscal years ending December 31, 2014, December 31, 2015 and December 31, 2016;

o.  Strong Memorial Hospital, Provider No. 33-0285, for fiscal year ending June 30, 2016;

p.  The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital, Provider No. 39-0226, for fiscal year ending June 30, 2019;

q.  Trustees of the University of Pennsylvania d/b/a Hospital of the University of Pennsylvania, Provider No. 39-0111, for fiscal year ending June 30, 2019;

r.  UPMC Magee-Womens Hospital d/b/a Magee-Womens Hospital of UPMC, Provider No. 39-0114, for fiscal year ending June 30, 2018;

s.  UPMC Presbyterian Shadyside, Provider No. 39-0164, for fiscal year ending June 30, 2018; and

t.  West Virginia University Hospital, Inc. d/b/a WVU Hospitals d/b/a J.W. Ruby Memorial Hospital, Provider No. 51-0001, for fiscal years ending December 31, 2015, December 31, 2017 and December 31, 2018.

9.      Defendant Xavier Becerra is the Secretary of the Department of Health and Human Services and is the federal officer responsible for administering the Medicare program pursuant to the Social Security Act. Defendant is sued in his official capacity. References to "Defendant" or "Secretary" herein are meant to refer to him, his subordinates, his official predecessors or

successors, and the Department and its components that he oversees, as the context requires.

## BACKGROUND

### I.    The Medicare Program and Payment for Hospital Services

10.    Medicare is a public health insurance program that generally furnishes health benefits to participating individuals once they reach the age of 65. 42 U.S.C. § 1395c. The Secretary has delegated much of the responsibility for administering the Medicare program to the Centers for Medicare and Medicaid Services ("CMS"), which is a component of the Department of Health and Human Services.

11.    Under the Medicare statute, an eligible Medicare beneficiary is entitled to have payment made by Medicare on his or her behalf for, *inter alia*, inpatient and outpatient hospital services provided by a hospital participating in the Medicare program as a provider of health care services. *Id.* The Medicare program consists of four Parts: A, B, C, and D. Inpatient hospital services are paid under Part A of the Medicare statute. *Id.* § 1395d(a). Physician, hospital outpatient, and certain other services are paid under Medicare Part B. *Id.* § 1395k(a). Medicare Part C is an optional managed care program that pays for services that would otherwise be covered under Medicare Parts A and B. *Id.* §§ 1395w-21–1395w-29. Medicare Part D is an optional insurance program for prescription drugs. *Id.* §§ 1395w-101–1395w-154. This action concerns Medicare Part A.

### II.    Direct Graduate Medical Education

12.    The Medicare statute reimburses hospitals for the direct costs of graduate medical education. 42 U.S.C. § 1395ww(h). The DGME payment is calculated by multiplying a hospital's "patient load" times its "approved amount." 42 U.S.C. § 1395ww(h)(3)(A). The "patient load" is "the fraction of the total number of inpatient-bed-days . . . during the period which are attributable

8

to patients with respect to whom payment may be made under [Medicare] part A." 42 U.S.C. § 1395ww(h)(3)(C). The "approved amount" is the product of a hospital's base-period per-resident amount ("PRA") and its weighted average number of FTE residents. *Id*. § 1395ww(h)(3)(B); 42 C.F.R. § 413.76(a). The weighted average number of FTEs is calculated using the average of "the actual full-time equivalent resident counts for the cost reporting period and the preceding two cost reporting periods." 42 U.S.C. § 1395ww(h)(4)(G). This action concerns the FTE component of the DGME payment calculation. The following is the basic formula for calculating a hospital's DGME payment:

**PRA x (3-year FTE average) x (Medicare Patient Load) = DGME Payment**

13.     When determining the FTE count, residents who are beyond their IRP are weighted at 0.5, so that only half their time is counted. *Id.* § 1395ww(h)(4)(C). The IRP is defined as the period necessary for board eligibility in the resident's training program, not to exceed five years. *Id.* § 1395ww(h)(5)(F). Most, though not all, residents who are beyond the IRP are participating in post-residency fellowship programs.

14.     For cost reporting periods beginning on or after October 1, 1997, Congress established a cap on the number of *unweighted* DGME FTEs that a hospital may count, which is set at each hospital's number of unweighted FTEs during its most recent fiscal year that ended on or before December 31, 1996. *Id.* § 1395ww(h)(4)(F).[1] Thus, a hospital's three-year FTE average in the DGME formula is limited by the number of unweighted FTEs that the hospital trained in its 1996 cost reporting period. The FTE cap is determined "before application of weighting factors" based on the IRP.  *Id.* § 1395ww(h)(4)(F)(i).

---

[1] This cap is subject to limited adjustment under certain other statutory provisions, however such adjustments do not impact the method of calculating DGME payment.

15.     In 1997, the Secretary promulgated a regulation to implement the 1996 cap that calculates a *weighted* FTE cap to be used in the payment calculation:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 1997, exceeds the limit described in this paragraph (g) [i.e., the 1996 unweighted cap], the hospital's weighted FTE count (before application of the limit) will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 .F.R. § 413.86(g)(4) (1997).

16.     When issuing this regulation, the Secretary stated, "We believe this proportional reduction in the hospital's unweighted FTE count is an equitable mechanism for implementing the statutory provision." Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1998 Rates, 62 Fed. Reg. 45,966, 46,005 (Aug. 29, 1997) (final rule with comment period); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1998 Rates, 63 Fed. Reg. 26,318, 26,330 (May 12, 1998) (final rule) (hereinafter "FY 1998 IPPS Rule").

17.     On August 1, 2001, the Secretary amended the regulation to determine separate weighted FTE caps for primary care residents and non-primary care residents, effective for cost reporting periods beginning on or after October 1, 2001. 42 C.F.R. § 413.86(g)(4)(iii) (2001); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Rates and Costs of Graduate Medical Education: Fiscal Year 2002 Rates, 66 Fed. Reg. 39,828, 39,893- 96 (Aug. 1, 2001) (hereinafter the "FY 2002 IPPS Rule"). The Secretary did not change the formula for determining the weighted FTE cap. Rather, the Secretary used the same methodology as in the 1997 rule to calculate a primary care weighted FTE cap and a non-primary care weighted FTE cap, which are then added together. 42 C.F.R. § 413.86(g)(4)(iii); FY 2002 IPPS Rule, 66 Fed. Reg. at

39,894.

18.     In 2004, CMS redesignated the regulation from 42 C.F.R. § 413.86(g)(4)(iii) to 42 C.F.R. § 413.79(c)(2)(iii). Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 46 Fed. Reg. 48,916, 49,112, 49,258-64 (Aug. 11, 2004).

19.     The regulation in effect during all fiscal years at issue in this action states as follows:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 2001 exceeds the limit described in this section [i.e., the 1996 unweighted cap], the hospital's weighted FTE count (before application of the limit) for primary care and obstetrics and gynecology residents and nonprimary care residents, respectively, will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.79(c)(2)(iii) (2010-2017). This regulation is still in effect today.

20.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) calculates the ratio of a hospital's unweighted FTE cap to the hospital's current-year unweighted FTE count. 42 C.F.R. § 413.79(c)(2)(ii)-(iii) (the "proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996"). This ratio represents the percentage by which the hospital's 1996 cap is above or below the current-year unweighted FTE count. The ratio is then multiplied by the current-year weighted FTE count (both residents within and beyond their IRP) to reduce the weighted count. *Id.* The resulting number is the weighted FTE cap. The Secretary's methodology is expressed in the following equation:

**(1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap**

The Secretary describes the result of this formula as "the hospital's reduced cap." FY 2002 IPPS

Rule, 66 Fed. Reg. at 39,894.

21.     The regulation calculates a hospital's DGME payment based on its weighted FTEs, which may not exceed its weighted cap. 42 C.F.R. §§ 413.76(a), 413.79(c)(2)(iii).

### III.     Medicare Cost Report Appeals

22.     At the close of a hospital's fiscal year, it is required to submit to its designated Medicare Administrative Contractor ("MAC") a "cost report" showing both the costs incurred by the hospital during the fiscal year and the appropriate share of these costs to be apportioned to Medicare. 42 C.F.R. § 413.24(f) (2018). MACs are private companies under contract with the Secretary to pay Medicare claims and audit hospital cost reports, among other duties. 42 U.S.C. § 1395kk-1.

23.     The MAC must analyze and audit the cost report and inform the hospital of a final determination of the amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803(a). A hospital's DGME payment is among the components of the final payment determination reported in the NPR.

24.     A hospital that is dissatisfied with the MAC's final determination or that did not receive a timely MAC final determination has a statutory right to a hearing before the Board. 42 U.S.C. § 1395oo(a).

25.     The Board has jurisdiction over such appeals if the following requirements are met: (1) the hospital is dissatisfied with the final MAC determination or has not received a final determination from the MAC on a timely basis; (2) the amount in controversy is at least $10,000; and (3) the hospital requests a hearing within 180 days of receiving the final determination or within 180 days after such determination would have been received if it had been timely made. *Id*.

26.     A group of hospitals may appeal a common dispute to the Board if the following

requirements are met: (1) the hospitals are dissatisfied with the final MAC determinations or have not received final determinations from the MAC on a timely basis; (2) the amount in controversy is, in the aggregate, at least $50,000; and (3) the hospitals request a hearing within 180 days of the Secretary's determinations or within 180 days after such determinations would have been received if they had been timely made. *Id*. § 1395oo(a)-(b). A group of hospitals may file a group appeal directly without first filing individual appeals. *Id.* § 1395oo(b); 42 C.F.R. § 405.1837(a), (b). A hospital may also transfer an issue from an individual appeal to a group appeal. 42 C.F.R. § 405.1837(e)(4).

27.     In addition, for group appeals, the matter at issue must involve "a single question of fact or interpretation of law, regulations, or CMS Ruling that is common to each provider in the group." 42 C.F.R. § 405.1837(a)(2).

28.     The Board lacks the authority to decide the validity of a Medicare regulation. *Id*. § 405.1867. If a hospital (or group of hospitals) appeals an issue that involves a question that is beyond the Board's authority, the Board may authorize EJR of the case. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842.

29.     The Board must grant EJR if it determines that (1) the Board does not have the authority to decide the legal question because the question is a challenge either to the constitutionality of a statute or to the substantive or procedural validity of a regulation or CMS Ruling; and (2) the Board has jurisdiction to hold a hearing on the specific matter at issue. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842(f)(1).

30.     If the Board issues an EJR decision, the CMS Administrator has the right to "review the Board's jurisdictional finding, but not the Board's authority determination." 42 C.F.R. § 405.1842(a)(3). The Board's decision to grant EJR "becomes final and binding on the parties

unless the decision is reversed, affirmed, modified, or remanded by the Administrator." *Id.* § 405.1842(g)(1)(iii). A final Board decision constitutes the final agency action of the Secretary. 42 C.F.R. § 405.1877(a)(2).

31.     If the Board grants a hospital's request for EJR, the hospital may seek judicial review of the action involving a question of law or regulations by commencing a civil action within sixty days of the date on which notification of the Board's EJR determination is received. 42 U.S.C. § 1395oo(f)(l); 42 C.F.R. § 405.1842(g)(2).

## FACTS SPECIFIC TO THIS CASE

32.     Plaintiffs are teaching hospitals that receive Medicare DGME payments. Plaintiffs all trained residents in their fiscal year 1996 ("FY 1996") cost reporting periods. Accordingly, the Secretary established a DGME FTE cap for each Plaintiff based on its FY 1996 resident FTE count.

33.     During the fiscal years at issue in this action, Plaintiffs' FTE counts exceeded their 1996 FTE caps. Plaintiffs' FTE counts included residents who were both within and beyond the IRP. The Secretary employed the methodology of the regulation at 42 C.F.R. § 413.79(c)(2)(iii) when applying the FTE weighting factors to Plaintiffs' DGME FTE caps.

34.     Each Plaintiff timely filed an appeal with the Secretary's Board following the receipt of its final determination from its MAC or the MAC's failure to timely issue a final determination, pursuant to 42 U.S.C. § 1395oo(a).  The Board assigned those case numbers 20-1595GC, 20-2063GC, 21-1798, 21-1641, 21-1779, 20-2020GC, 21-0212GC, 21-0214GC, 21-0326GC, 21-0678G, 21-1189GC, 21-1305GC and 21-1314GC.  These cases included both group and individual appeals formed pursuant to the applicable regulations and rules.

35.     On October of 2021, the Plaintiff Hospitals in those cases submitted requests that

14

the Board grant EJR on the question of the validity of the Secretary's methodology for applying

the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).

36.     On October 18, 2021, the Board granted EJR in case numbers 20-1595GC, 20-

2063GC, 21-1798, 21-1641 and 21-1779. *See* Exhibits A – D.  On November 16, 2021, the Board

granted EJR in case numbers 20-2020GC, 21-0212GC, 21-0214GC, 21-0326GC, 21-0678G, 21-

1189GC, 21-1305GC and 21-1313GC.   *See* Exhibit E.   The Board concluded in its EJR

determinations that it had jurisdiction over the matter for the subject years and lacked the authority

to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid. *See* Exhibits  A-E. As

of the filing of this complaint, the Board's decisions have not been reversed, affirmed, modified,

or remanded by the Administrator. The Board's EJR decisions constitute the Secretary's final

agency actions in these cases. By filing this Complaint, the Plaintiff Hospitals have timely sought

appeal of the Secretary's final decision under 42 U.S.C. § 1395oo(f)(1).

## COUNT I

### Violations of the Medicare Statute—DGME Payments

37.     Plaintiffs reallege and incorporate by reference paragraphs 1–36 as if fully set forth

below.

38.     The applicable provisions of the APA provide that the "reviewing court shall . . .

hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] in

excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. §

706(2).

39.     The Secretary's regulation implementing the FTE cap and weighting factors is

contrary to the Medicare statute because it determines the cap after applying the weighting factors.

42 U.S.C. § 1395ww(h)(4)(F)(i). The effect of the Secretary's unlawful regulation is to impose on

Plaintiffs weighting factors that result in reductions greater than 0.5 for many residents who are beyond the IRP, and the regulation prevents Plaintiffs from claiming and receiving reimbursement for their full unweighted FTE caps. 42 C.F.R. § 413.79(c)(2)(iii). Thus, the Secretary's calculations of Plaintiffs' current-year, prior-year, and penultimate-year weighted DGME FTEs and the FTE caps are contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

40.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute. First, the regulation creates a weighted 1996 FTE cap. The statute plainly requires the Secretary to determine the 1996 FTE cap "before application of weighting factors," which is an unweighted cap. 42 U.S.C. § 1395ww(h)(4)(F)(i). Thus, the Secretary lacked the discretion to interpret the statute or deviate from its plain meaning. The Secretary's regulation, however, instead applies a weighted FTE cap for the current year that is based on the ratio of the 1996 unweighted FTE count to the current year unweighted FTE count. The Secretary concedes that the regulation results in "the hospital's reduced cap," which is less than the 1996 FTE cap. FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894. The Secretary applies this weighted FTE cap as an absolute limit on the number of FTEs that can be included in a hospital's DGME payment calculation. This weighted FTE cap is applied *after* applying the weighting factors to residents who are beyond the IRP in the current year, which violates Congress's directive to determine the cap *before* applying those weighting factors. 42 U.S.C. § 1395ww(h)(4)(F)(i).

41.     Second, the Secretary's weighted FTE cap prevented Plaintiffs from ever reaching their 1996 unweighted FTE caps simply because they train fellows beyond their IRPs. In fact, the Secretary's regulation prevents any hospital that trains fellows beyond the IRP from reaching its 1996 FTE cap. The downward impact on the FTE count increases as a hospital trains more

residents who are beyond the IRP.

42.     The following example illustrates the unlawful impact of the Secretary's regulation. The example compares the application of 42 C.F.R. § 413.79(c)(2)(iii) to FTE statistics for Strong Memorial Hospital during its fiscal year ending June 30, 2016 ("FY 2016") and a hypothetical Hospital A that has the same 1996 FTE cap as Strong Memorial Hospital and the same count of residents within its IRPs as Strong Memorial Hospital. The only difference between the two hospitals is that Strong Memorial Hospital trained fellows beyond the IRPs:

|  | Strong FY 2016 | Hospital A |
|---|---|---|
| 1996 Unweighted FTE Cap (UCap) | 462.31 | 462.31 |
| Current Year Unweighted resident FTEs | 468.35 | 468.35 |
| Current Year Unweighted fellow FTEs | 172.26 | 0.00 |
| Current Year Total unweighted FTEs (UFTE) | 640.61 | 468.35 |
| Current Year Total weighted FTEs before application of cap (WFTE) | 554.48 | 468.35 |
| Current Year Total weighted FTEs after application of cap (WCap) | 400.15 | 462.31 |

The Secretary's formula at 42 C.F.R § 413.79(c)(2)(iii) results in weighted FTE caps of 400.15 for Strong Memorial Hospital and 462.31 for Hospital A:

- 42 C.F.R. § 413.79(c)(2)(iii) formula:

  (1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap

- 42 C.F.R. § 413.79(c)(2)(iii) applied to Strong Memorial Hospital:

  462.31/640.61 x 554.48 = **400.15**

- 42 C.F.R. § 413.79(c)(2)(iii) applied to Hospital A:

  462.31/468.35 x 468.35 = **462.31**

43.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) results in very different payments for Strong Memorial Hospital and Hospital A. Because Hospital A does not train fellows beyond their IRPs, it receives a DGME payment based on its full 1996 FTE cap of 462.31 FTEs,

31900773.1

even though its weighted FTEs are *lower* than Strong Memorial Hospital's weighted FTEs. Hospital A would be paid for 62.16 FTEs *more* than Strong Memorial Hospital, even though their FTE caps are identical, and Hospital A trained 86.13 *fewer* weighted FTEs (before application of weighted cap) than Strong Memorial Hospital.

44.     The Secretary's regulation results in Strong Memorial Hospital receiving far less reimbursement than hypothetical Hospital A simply because Strong Memorial Hospital trained 172.26 fellows in FY 2016. Strong Memorial Hospital would receive far less reimbursement than Hospital A, even though it trained 172.26 more individuals than Hospital A trained. The Medicare statute requires that these fellows be weighted at 0.5, and the statute also requires that Strong Memorial Hospital is limited to its 1996 FTE cap of 462.31, but the Secretary has violated the statute by calculating an FTE count far below the 1996 FTE cap solely as a result of the Secretary's improper imposition of a weighted FTE cap.

45.     All Plaintiffs are similarly situated to Strong Memorial Hospital. Each Plaintiff trained residents who were beyond their IRPs, and each Plaintiff trained a total number of residents that was higher than its unweighted 1996 FTE cap. Each Plaintiff is prevented from receiving DGME payments based on its unweighted 1996 FTE cap due to the Secretary's unlawful regulation.

46.     All Plaintiffs suffered a downward payment adjustment that is greater than may be imposed by the statutory 0.5 weighting factor for training residents beyond the IRP.

47.     By establishing the cap based on the hospital's unweighted FTE count for 1996, Congress entitled Plaintiffs to claim FTEs up to that cap. The Secretary's regulation renders this impossible because Plaintiffs trained residents who are beyond the IRP. The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute at 42 U.S.C. § 1395ww(h) and is,

therefore, invalid and must be set aside under the APA.

48.     The U.S. District Court for the District of Columbia has in fact already ruled that the regulation is contrary to law. *Milton S. Hershey Med. Ctr. v. Becerra*, No. 19-2680 (May 17, 2021). In *Hershey*, several hospitals similar to the Plaintiff Hospitals alleged that the methodology dictated by CMS's regulation was contrary to law and arbitrary and capricious because it improperly reduces the weights for residents and fellows below the weighting factors set by the statute for hospitals that exceed their 1996 cap. Using hypotheticals, the court noted that "when the hospital exceeds the cap, and employs fellows, the post-regulation weighted FTE no longer reflects [1.0 FTE for residents and 0.5 FTE for fellows]." *Id.* at 10. Applying the *Chevron* standard, the court agreed that the regulation was contrary to the unambiguously expressed intent of Congress. *Id.* The court correctly concluded that "the text of the statute does not give the Secretary the latitude to decide, under these conditions, to change the weights that Congress assigned to residents and fellows when he calculates the FTE residents for each hospital." *Id.* at 11. Ultimately, the court ruled in favor of the plaintiff hospitals and directed the Secretary to recalculate the plaintiffs' DGME payments. Although the Secretary initially appealed that decision, he more recently withdrew his appeal. Thus, the district court's decision is the final determination on this issue. However, the Secretary to date has not withdrawn the implementing regulation found by the court to violate the governing statute. The Plaintiff Hospitals therefore seek to have the regulation as applied to them ruled invalid, because it is inconsistent with the statute and its defined weighting factors.

## COUNT II

### Arbitrary and Capricious Agency Action—DGME Payments

49.     Plaintiffs reallege and incorporate by reference paragraphs 1–48 as if fully set forth

below.

50.      The applicable provisions of the APA provide that the "reviewing court shall . . .

hold unlawful and set aside agency action . . . found to be . . . arbitrary [and] capricious [or] an

abuse of discretion." 5 U.S.C. § 706(2).

51.      The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary and capricious and an

abuse of discretion and is, therefore, invalid. 5 U.S.C. § 706(2). By establishing a cap on FTEs,

Congress intended that hospitals be paid based on that cap. The Secretary's regulation prevents

Plaintiffs from reaching their FTE caps and improperly treats similarly situated hospitals

differently because hospitals with identical 1996 FTE caps and that have unweighted FTE counts

equal to their caps, will receive very different payments. When promulgating the regulation at 42

C.F.R. § 413.79(c)(2)(ii)-(iii), the Secretary wholly failed to justify this differing treatment. *See*

*Burlington N. and Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005).

The Secretary did not even acknowledge that its regulation would have such an inequitable effect.

FY 1998 IPPS Rule, 63 Fed. Reg. at 26,330. Because the Secretary relied on factors that Congress

has not intended him to consider and "entirely failed to consider an important aspect of the

problem," the regulation is "arbitrary and capricious," as well as an abuse of discretion, and must

be set aside under the APA. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*

*Co.*, 463 U.S. 29, 43 (1983).

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request an Order:

1.      Declaring that the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is

arbitrary, capricious, an abuse of discretion, and contrary to statutory law, and is therefore invalid;

2.      Declaring that 42 U.S.C. § 1395ww(h) forbids the Secretary from imposing a

weighted FTE cap;

3.      Declaring that the Secretary must apply FTE weighting factors after applying the unweighted FTE cap as required by 42 U.S.C. § 1395ww(h);

4.      Requiring the Secretary to recalculate Plaintiffs' DGME payments consistent with the Medicare statute so that the Plaintiffs' FTE counts are weighted for residents beyond the IRP at 0.5 and are capped based on the number of residents trained in the most recent cost reporting periods ending on or before December 31, 1996;

5.      Requiring the Secretary to pay Plaintiffs interest on the payments resulting from the Court's orders, pursuant to 42 U.S.C. § 1395oo(f)(2);

6.      Awarding Plaintiffs their costs and fees incurred in this litigation to the extent permitted by law; and,

7.      Granting such other relief in law and/or equity as this Court may deem just and proper.

Dated: <u>December 14, 2021</u>                Respectfully submitted,

<u>/s/ Leslie Demaree Goldsmith</u>
Leslie Demaree Goldsmith (DC Bar #422759)
Brian R. Iverson (DC Bar #1012843)
BASS, BERRY & SIMS PLC
1201 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20004
Telephone: (202) 827-7083
leslie.goldsmith@bassberry.com
biverson@bassberry.com

*Attorneys for Plaintiffs*

21